UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RAVEON HARRELL, <br><br> Plaintiff, <br><br> v. <br><br> NANCY MARTHAKIS, <br><br> Defendant. | CAUSE NO. 3:22-CV-606-APR |

OPINION AND ORDER

Raveon Harrell, a prisoner without a lawyer, is proceeding in this case "against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for deliberate indifference to Harrell's pain and suffering related to his hernia, in violation of the Eighth Amendment[.]" [DE 5 at 4]. Dr. Marthakis filed a motion for summary judgment. [DE 36]. Harrell filed a response, and Dr. Marthakis filed a reply. [DE 43, DE 46]. Harrell also filed a motion to amend his response, along with a motion for appointment of counsel. [DE 48, DE 49]. The summary judgment motion is now fully briefed and ripe for ruling.

*Undisputed Material Facts*

On March 13, 2020, Harrell was seen by a nurse regarding complaints of stomach pain and a "lump" in his stomach. [DE 39-1 at 3; DE 39-4 at 41-44]. Harrell relayed complaints of bloating, dull abdomen pain, and constipation. *Id.* After conducting an examination, the nurse encouraged Harrell to move around more after his meals, ordered Pepto-Bismol and fiber tabs, and instructed him to return to sick call if his symptoms continued. *Id.*

On August 6, 2020, Harrell was seen by a nurse regarding complaints of stomach pain. [DE 39-1 at 5-6; DE 39-4 at 25-27]. Afterward, the nurse referred Harrell to Dr. Marthakis. *Id.* It is undisputed that this was the first involvement of Dr. Marthakis in the treatment of Harrell.

On August 26, 2020, Dr. Marthakis saw Harrell regarding his complaints of stomach pain. [DE 39-1 at 6-7, 16-17; DE 39-4 at 21-24]. Dr. Marthakis examined Harrell's abdomen and found an umbilical hernia, approximately 2 centimeters in size. *Id.* She determined the hernia was located midline and was reducible, meaning it could be pushed back through the abdominal wall. *Id.* Dr. Marthakis diagnosed Harrell with an umbilical hernia and provided him a hernia belt and Naproxen. *Id.* Because Harrell was negative for chills, fever, nausea, and vomiting, Dr. Marthakis determined the hernia did not pose an immediate threat to his health and that he did not require emergent care, surgical repair, or additional testing at that time. *Id.*

On September 18, 2020, Harrell was seen by a nurse, and he requested an x-ray. [DE 39-1 at 7-8; DE 39-4 at 19-20]. He stated he was dissatisfied with his hernia diagnosis without any tests. *Id.* The nurse noted Harrell was not wearing his hernia belt and reminded him to follow the doctor's instructions. *Id.* The medical record does not indicate whether the nurse communicated with or made any referral to Dr. Marthakis on this occasion. *Id.*

Between September 19, 2020, and May 14, 2021, Harrell did not complain or submit any healthcare request forms regarding abdominal pain or hernia-related symptoms. [DE 39-1 at 18]. Additionally, nothing in the record indicates whether he wore the hernia belt.

On May 15, 2021, Harrell saw a nurse regarding complaints of throat pain, and also was assessed for abdominal pain. [DE 39-1 at 9; DE 39-4 at 6-7]. His abdomen was soft and non-tender upon palpation. *Id.* Harrell was referred to Dr. Marthakis regarding his throat pain. *Id.*

On May 19, 2021, Dr. Marthakis saw Harrell regarding his complaints of throat pain. [DE 39-1 at 9; DE 39-4 at 3-5]. She examined his throat and gave him education materials on gastroesophageal reflux disease (GERD), as well as Omeprazole tablets. *Id.* Harrell did not complain of abdominal or hernia-related pain on this occasion. *Id.*

On July 22, 2021, Harrell submitted a Healthcare Request Form asking to see a doctor because he felt like his hernia was "leaking" into his stomach. [DE 39-1 at 10; DE 39-5 at 1]. On July 29, 2021, the nursing staff examined Harrell, noted abdominal pain, and again referred him to Dr. Marthakis. [DE 39-1 at 10; DE 39-5 at 4-6].

On August 5, 2021, Dr. Marthakis saw Harrell regarding his hernia-related complaints. [DE 39-1 at 10; DE 39-5 at 7-12]. Upon physical examination, Dr. Marthakis noted a small umbilical hernia in the midline that reduced on its own. *Id.* She ordered an ultrasound and noted a plan for Harrell to continue wearing his hernia belt. *Id.*

On August 11, 2021, Harrell received an abdominal ultrasound performed by Meridian Radiology. [DE 39-1 at 11; DE 39-5 at 13]. The image demonstrated no evidence of a hernia. *Id.*

On September 2, 2021, Harrell was seen by the nursing staff and notified of his ultrasound results. [DE 39-1 at 11; DE 39-5 at 14-17]. Harrell expressed disagreement with the ultrasound results and was scheduled for a provider visit. *Id.*

On September 9, 2021, Dr. Marthakis met with Harrell for a follow-up regarding his ultrasound results. [DE 39-1 at 11; DE 39-5 at 18-20]. She discussed the negative and normal findings of the ultrasound and the finding of no hernias. *Id.*

On September 17, 2021, Harrell was seen by the nursing staff regarding complaints of a lump in his stomach. [DE 39-1 at 11; DE 39-5 at 21-24]. He was referred to Dr. Marthakis and instructed to return to sick call if his symptoms became worse. *Id.*

On September 22, 2021, Dr. Marthakis met with Harrell regarding his ongoing complaints of stomach pain. [DE 39-1 at 12; DE 39-5 at 26-29]. She performed an examination and noted Harrell did not appear to be in distress and had no difficulty getting onto the exam table. *Id.* Dr. Marthakis assessed him with a colon spasm and ordered routine lab work and an abdominal x-ray. *Id.* On September 24, 2021, Harrel received an X-ray of his abdomen, which found "no acute abdominal or pelvic abnormality, and osseous degenerative changes." [DE 39-1 at 12].

On October 5, 2021, Dr. Marthakis met with Harrell for a follow-up regarding his stomach pain. [DE 39-1 at 12; DE 39-5 at 32-34]. She noted he walked with ease and had no difficulty standing up or sitting down. *Id.* She assessed him with a colon spasm and decided to let him try one month of fiber tablets and to alert medical staff if any changes occurred. *Id.*

On December 24, 2021, Harrell was seen by the nursing staff regarding complaints of pain, leaking, and burning in his stomach. [DE 39-1 at 12-13; DE 39-5 at 38-41]. The nursing staff noted Harrell did not demonstrate any visual signs of distress and contacted Dr. Marthakis, who gave orders that he be given Tylenol and instructed to purchase Pepcid from the commissary. *Id.*

On January 19, 2022, Harrell was seen by Nurse Practitioner Todd Wolford, who assessed him with an abdominal hernia approximately 9 millimeters in mass. [DE 39-1 at 13; DE 39-5 at 49-54]. NP Wolford consulted with Dr. Marthakis and they initially agreed to request a surgical consultation. After further discussion, they determined a CT scan would be more productive. *Id.*

Dr. Marthakis submitted an order for a CT scan of Harrell's abdomen and pelvis, which was performed on February 9, 2022. [DE 39-1 at 13; DE 39-5 at 62-65]. The CT scan demonstrated an umbilical hernia that was roughly 8 millimeters in mass. *Id.*

On February 28, 2022, Harrell met with a nurse to discuss the results of the CT scan. [DE 39-1 at 14; DE 39-5 at 68-74]. The nurse informed Harrell he was being referred to a general surgeon for a consultation. *Id.* On March 16, 2022, Dr. Marthakis submitted a request for a surgery consultation, indicating the consultation was necessary due to the findings of the CT scan. [DE 39-1 at 14; DE 39-5 at 75-77].

On April 2, 2022, Dr. Marthakis entered pre-surgical orders in anticipation of Harrell's abdominal surgery, including orders for pre-surgical labs, an EKG, and an X-ray. [DE 39-1 at 15; DE 39-5 at 97-104]. The x-ray showed no acute processes. [DE 39-1 at 15].

On April 4, 2022, Harrell was seen by Associates in Surgery for an umbilical hernia surgery consultation. [DE 39-1 at 14; DE 39-5 at 90-94]. Harrell was diagnosed with an umbilical hernia, and a CT scan was ordered. *Id.*

On May 13, 2022, Harrell received umbilical hernia repair surgery at Northwest Health LaPorte. [DE 39-1 at 15; DE 39-5 at 114-42]. The surgery was a success, and an abdominal binder was placed post-surgery for comfort. *Id.* Later that day, Harrell returned to the facility and was seen by the nursing staff. [DE 39-1 at 15; DE 39-5 at 112-13]. Dr. Marthakis ordered blood tests and regular Tylenol. *Id.*

On June 2, 2022, Harrell returned to Associates in Surgery for a follow-up for his hernia surgery. [DE 39-1 at 15; DE 39-5 at 145-54]. He denied any issues, and he was not seen again

for complaints of an umbilical hernia. *Id.* Because neither party disputes these facts, the court accepts them as undisputed.[1]

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Federal Rule of Civil Procedure 56(a)**. A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. ***Heft v. Moore***, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." ***Goodman v. Nat'l Sec. Agency, Inc.***, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. ***Estelle v. Gamble***, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. ***Farmer v. Brennan***, 511 U.S. 825, 834 (1994). Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent

---

[1] Harrell states he "strongly object[s] to all of the allegations made in the Def. Material facts" (DE 43 at 1), but he does not identify which facts he disputes or provide any facts of his own that conflict with the defendant's facts. Harrell's vague assertion that he disputes all facts is insufficient to create a genuine dispute. *See* ***Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163***, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations").

harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Dr. Marthakis argues summary judgment is warranted because the undisputed facts show she provided timely and adequate care for Harrell's umbilical hernia. [DE 37 at 8-19]. Here, it is undisputed that: (1) Dr. Marthakis diagnosed Harrell with an umbilical hernia on August 26, 2020, and provided him with a hernia belt and Naproxen; (2) between September 2020 and May 2021, Harrell did not complain of or request treatment for abdominal pain or hernia-related symptoms; (3) between May 2021 and January 2022, Dr. Marthakis treated Harrell's hernia-related complaints by ordering ultrasounds, lab work, x-rays, CT scans, fiber tablets, and Tylenol; and (4) in February 2022, Dr. Marthakis ordered a surgical consultation which resulted in Harrell receiving a successful hernia repair surgery. Thus, because it is undisputed Dr. Marthakis consistently provided treatment for Harrell's hernia-related symptoms, Harrell must provide evidence this treatment was "plainly inappropriate." *See Hayes*, 546 F.3d at 524.

In his response, Harrell recites many of the same facts from his medical records and argues generally that his records show deliberate indifference. [DE 43]. But while Harrell may disagree with Dr. Marthakis' treatment decisions, he provides no evidence the treatment he received was "plainly inappropriate." *See Ciarpaglini*, 352 F.3d at 331 (a mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation). Harrell argues Dr. Marthakis should have done more to diagnose and treat his umbilical hernia, but there is no evidence it was improper for Dr. Marthakis to run various tests and attempt other treatment methods before referring Harrell for a surgical consultation. Dr. Marthakis claims each of her treatment decisions was a reasonable and valid exercise of her professional judgment, and Harrell provides no evidence to the contrary aside from his own personal disagreement with the treatment he received.

Harrell makes only two specific arguments in his response. First, he argues Dr. Marthakis should have prescribed him medication rather than instruct him to purchase it from the commissary. [DE 43 at 3]. But it is undisputed Harrell was provided medication on numerous occasions, including Naproxen, Tylenol, and fiber tablets, and there is no evidence it was "plainly inappropriate" for Dr. Marthakis to instruct him to purchase additional medications from the commissary. Harrell is not entitled to free medical care. **Poole v. Isaacs**, 703 F.3d 1024, 1027 (7th Cir. 2012). Second, Harrell argues it was "medical malpractice" for Dr. Marthakis to provide fiber tabets for his umbilical hernia. *Id.* at 4-5. But he provides no competent evidence supporting this assertion. And even assuming it was improper for Dr. Marthakis to provide fiber tablets, this does not show deliberate indifference. *See* **Pierson**, 391 F.3d at 902 (negligence and medical malpractice do not amount to deliberate indifference).

Thus, because it is undisputed Dr. Marthakis consistently provided treatment for Harrell's hernia-related symptoms, and Harrell provides no evidence the treatment he received was "plainly inappropriate," no reasonable jury could conclude Dr. Marthakis violated Harrell's Eighth Amendment rights. Therefore, summary judgment is warranted in favor of Dr. Marthakis.

Lastly, Harrell filed two additional motions that must be addressed. First, he filed a motion to amend his response to Dr. Marthakis' summary judgment motion. [DE 48]. Harrell filed his response to the summary judgment motion on December 20, 2023, and Dr. Marthakis filed a reply on January 17, 2024. [DE 43; DE 46]. In his motion to amend, Harrell indicates he lacks a legal team or legal training and is still gathering information to respond to questions raised in the summary judgment motion. [DE 48].

Summary judgment "is the put up or shut up moment in a lawsuit . . . ." **Springer v. Durflinger**, 518 F.3d 479, 484 (7th Cir. 2008). District courts "may strictly enforce local

summary-judgment rules" even against parties who are unrepresented by counsel. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 (7th Cir. 2019). This court's local rules provide for a response and a reply. Harrell was provided with the notice required by Northern District of Indiana Local Rule 56-1. That notice stated that:

> Before the court rules on the motion, you have the right to file a response. If you do not respond to the summary-judgment motion, you may lose this case. If you need more time to respond, you must file a motion asking for more time before the deadline expires.

[DE 40 at 2]. Harrell filed his response, reviewed the reply, and now wants to offer a different response. In short, because he is not represented by counsel, Harrell wants a second bite at the apple, and that is not warranted.

For these reasons, Harrell's request to amend his response is denied. However, the court notes that the proposed response has been reviewed, and it would make no difference in the outcome of this case. Specifically, Harrell's proposed amended response reiterates many of the same arguments, suffers from many of the same deficiencies as his initial response, and provides no additional facts or evidence that would change the outcome of this case.

Second, Harrell filed a motion for counsel. [DE 49]. There is a fully briefed summary judgment motion before the court, and appointing counsel now would not alter the outcome of this case. The summary judgment will be granted – whether Harrell has counsel or not. Therefore, the motion for counsel [DE 49] will be denied.

For these reasons, the court:

(1) **GRANTS** Dr. Marthakis' summary judgment motion [DE 36];

(2) **DENIES** Harrell's motion to amend his response [DE 48];

(3) **DENIES** Harrell's motion for appointment of counsel [DE 49]; and

(4) **DIRECTS** the clerk to enter judgment in favor of Dr. Marthakis and against Raveon Harrell and to close this case.

SO ORDERED on this 2nd day of May, 2024.

                                          /s/ Andrew P. Rodovich
                                          MAGISTRATE JUDGE
                                          UNITED STATES DISTRICT COURT